**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| BOBBY COUVILLION,<br>TARA INGRAHAM,<br><br>*Plaintiffs*,<br><br>v.<br><br>RANDY SMITH, GREGORY SAURAGE,<br>TROY SIDER, Interim Sheriff BRET IBERT,<br><br>*Defendants*. | Civil Action 26-cv-2038 |

**COMPLAINT**

1. This is a case about how then-Sheriff Randy Smith attacked one of his critics without warning and beat him to the point of concussion, injury, and hospitalization.

2. Plaintiff Bobby Couvillion is a resident of St. Tammany Parish who often posted on blogs and podcasts criticizing Defendant Randy Smith, who was the St. Tammany Parish Sheriff at the time of the incident.

3. In the afternoon of Friday, May 29, 2026, Sheriff Smith and two bail bondsmen, Defendants Gregory Saurage and Troy Sider, were heavily drinking after lunch at Keith Young's Steakhouse.

4. Mr. Couvillion and his wife, Plaintiff Tara Ingraham, also arrived at the restaurant to celebrate Mr. Couvillion's birthday.

5. Mr. Saurage indicated to Sheriff Smith where Mr. Couvillion was seated and made aggressive gestures towards Mr. Couvillion in the moments leading up to the attack. Criminal investigators concluded that "Saurage signaled Randy Smith to execute an attack on Robert

Couvillion. "

6. With this encouragement from Mr. Saurage, Sheriff Smith angrily attacked Mr. Couvillion.

7. Specifically, Sheriff Smith came up behind Mr. Couvillion, placed him in a chokehold, and slammed his head to the concrete floor before punching him. Mr. Sider used his body to stop bystanders from intervening and stepped on Mr. Couvillion.

8. Sheriff Smith yelled, "I'm going to kill you, you motherfucker," and continued shouting threats at Mr. Couvillion as bystanders dragged the Sheriff out of the restaurant.

9. Just feet away, Tara Ingraham witnessed Sheriff Smith attacking her husband. Sheriff Smith lied to bystanders and said Couvillion attacked *him.* When Tara contradicted this, Sheriff Smith told her to "shut the fuck up, bitch," and lunged at her.

10. Criminal investigators concluded that the injuries Sheriff Smith inflicted on Couvillion's "constitute serious bodily injury as defined under Louisiana law, including neurological impairment in the form of a concussion and potential long term or permanent disfigurement, specifically his teeth."

11. And while this may be the most extreme example of Sheriff Smith attacking a critic, it was not the first time.

12. Early in his career as Sheriff, Smith fired nearly a dozen deputies who supported his political rival. Sheriff Smith labeled an advocacy organization a "hate group" when it opposed a tax renewal Smith wanted. Sheriff Smith fired his Chief Deputy for refusing to participate in the cover-up of officer misconduct. And Sheriff Smith ordered the illegal arrest of a federal agent who privately criticized a Sheriff's office investigation.

13. With each act of retaliation, Sheriff Smith grew bolder and bolder. This year, his

retaliation escalated into alcohol-fueled violence, encouraged and facilitated by Saurage.

14. On at least one thing, Plaintiffs and Sheriff Smith agree: "Actions have consequences."[1] Mr. Couvillion now seeks accountability for violations of his constitutional rights, including his First Amendment right to free speech and Fourth Amendment protection against excessive force by law officers.

15. Plaintiffs also raise state tort claims of assault, battery, and intentional infliction of emotional distress as well as state constitutional claims against Defendants Smith and Saurage.

**JURISDICTION AND VENUE**

16. This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action per 28 U.S.C. § 1331.

17. The retaliation claim arises under the First and Fourteenth Amendments of the Constitution, which together protect freedom of speech at the state level.

18. The excessive force claim arises under the Fourth and Fourteenth Amendments of the Constitution, with together protect against excessive force and unlawful seizures at the state level.

19. This Court also has supplemental jurisdiction over state claims related to this action under 28 U.S.C. § 1367(a). These state claims are so related to the original jurisdiction because they form part of the same federal question case or controversy as required by Article III of the Constitution.

20. Sheriff Smith's retaliatory actions and use of excessive force against Mr. Couvillion also raise Louisiana state tort claims for battery and assault.

21. Sheriff Smith's actions during the incident at issue also raise an intentional

[1] *Sheriff Smith Issues Statement,* available online at https://www.stpso.com/news_detail_T6_R247.php

infliction of emotional distress claim for Ms. Ingraham.

22. Mr. Saurage and Mr. Sider's roles in encouraging and helping Sheriff Smith to attack Mr. Couvillion also raise state claims.

23. Keith Young's Steakhouse is a restaurant located at 165 LA-21, Madisonville, LA 70447, in St. Tammany Parish. Its primary place of business is the same. Venue is therefore proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in St. Tammany Parish, within the Eastern District of Louisiana.

## PARTIES

24. Plaintiff **Robert "Bobby" Couvillion** is a person of the full age of majority and a resident and domiciliary of St. Tammany Parish.

25. Plaintiff **Tara Ingraham** is a person of the full age of majority and a resident and domiciliary of St. Tammany Parish.

26. Defendant **Randy Smith** is a person of the full age of majority and a resident and domiciliary of St. Tammany Parish.

27. Mr. Smith was sheriff of St. Tammany parish at the time of the incident.

28. He is sued in both his individual and official capacities.

29. Defendant **Gregory Saurage** is a person of the full age of majority and a resident and domiciliary of St. Tammany Parish.

30. Defendant **Troy Sider** is a person of the full age of majority and a resident and domiciliary of St. Tammany Parish.

31. Defendant **Interim Sheriff Bret Ibert** is a person of the full age of majority and a resident and domiciliary of St. Tammany Parish.

32. Sheriff Ibert is sued in his official capacity only. He did not participate in the attack

on Mr. Couvillion, but is sued solely as an extension of the official capacity of Sheriff Smith after Sheriff Smith's resignation.

## FACTUAL BACKGROUND

### A. While Sheriff, Randy Smith exhibited an unusual antipathy for political opposition, and engaged in an escalating series of retaliation against his critics.

33. Sheriff Smith has a long history of retaliation against his critics.

34. For example, ten deputies sued Sheriff Smith, alleging that he fired them after a 2015 election because of the deputies' support of Smith's political opponent.[2]

35. In that case, four different witnesses swore under oath that Sheriff Smith "told them he was going to fire certain employees due to their political support for former Sheriff Strain."[3]

36. Indeed, multiple witnesses saw Sheriff Smith fire three deputies at a "campaign rally in support of former Sheriff Strain"[4] when they were wearing the t-shirt of Smith's rival.[5]

37. The deputy-firing case was settled in 2021.[6]

38. Similarly, Sheriff Smith initially was favorable towards the Concerned Citizens of St. Tammany Parish, a local advocacy group. Sheriff Smith spoke at one of their public meetings and "praised the group for its work in fighting corruption in the parish."[7]

39. But in 2016, when CCST opposed a tax renewal that would have benefitted the Sheriff's office, Sheriff Smith labeled CCST a "hate group" in official correspondence to deputies, "a category usually reserved for outfits like the Ku Klux Klan and the Nation of Islam."[8]

---

[2] *Moore v. Smith,* 17-cv-05219 (E.D. La.).
[3] *Id.*, R. Doc. 241 at *6 (E.D. La., July 31, 2020) (ruling on summary judgment).
[4] *Id*. at *7.
[5] *Moore v. Smith*, R. Doc. 1 at ¶ 12.
[6] *Id*. at R. Doc. 332.
[7] Faimon Roberts, St. Tammany Sheriff calls civic organization a 'hate group' in email to deputies, Times-Picayune Advocate (Dec. 14, 2016).
[8] *Id*.

40. In another case, former Chief Deputy Fred Oswald sued Sheriff Smith over his termination. Oswald had pushed for a criminal investigation into Kenneth Szalajeski, a former deputy accused of stealing drugs during traffic stops and giving them to his girlfriend.[9]

41. According to Oswald, Smith texted Oswald July 14, 2017, "Please stop with the Szalajeski case. I have talked to Warren and we are done on our part." When Oswald pushed back and Szaljeski was indicted, Smith fired Oswald.[10]

42. Then, in 2019, Randy Smith's office learned that Jerry Rogers, a federal law enforcement agent, was sending private, anonymous emails critical of a sheriff's office investigation. Smith's office tracked Rogers down and arrested him for criminal defamation – even though the United States Supreme Court had declared Louisiana's criminal defamation statute unconstitutional as applied to speech about public officials in 1964.[11]

43. Smith's office asked the District Attorney's office for advice, and was told that it would be unconstitutional to arrest Rogers. But "arresting Jerry Rogers for criminal defamation" was "very important" to Sheriff Smith.[12] Smith told his deputies to "move forward" with arresting Rogers.[13]

44. Rogers sued Smith and his deputies. A section of this Court granted Rogers partial summary judgment, ruling that he was "entitled to judgment in his favor on his claim for § 1983 false arrest and state law false arrest and false imprisonment" against the officers involved in the

[9] Katie Moore, Sheriff's Office says 'whistleblower' lawsuit dismissed, WWLTV (October 26, 2022).
[10] *Id.*
[11] *Garrison v. State of La.*, 379 U.S. 64 (1964).
[12] *Rogers v. Smith*, R. Doc. 158-7 (Smith Dep.) at 50:3-5 ("Q. Okay. Was arresting Jerry Rogers for criminal defamation very important to you? A. As well, yes.")
[13] R. Doc. 158-6 at 116:20-21 ("We had a meeting with everyone, briefed the sheriff. The sheriff said move forward."); R. Doc. 158-4 at 63:15-18 ("Q. So the sheriff approved the decision to move forward with the application for arrest of Jerry Rogers, agreed? A. The affidavit, yes, sir.")

investigation and arrest.[14] Defendants appealed. The Fifth Circuit affirmed the grant of summary judgment to Rogers less than nine hours after oral argument.[15] Defendants sought a writ of certiorari. It was denied.[16] The case settled.[17]

**B. In 2026, Sheriff Smith's retaliation against perceived criticism turned violent. Without warning, and at the encouragement of Mr. Saurage, Sheriff Smith attacked Bobby Couvillion and beat him to the point of hospitalization.**

45. Mr. Couvillion is a local business owner in St. Tammany Parish.

46. He was known for sharing his takes on local issues on social media, including the Couyon Show podcast.

47. On many occasions, Mr. Couvillion criticized Sheriff Smith's leadership of the St. Tammany Parish Sheriff's Office.

48. On Friday, May 29, 2026, Sheriff Smith, Mr. Saurage, Mr. Saurage's employer Troy Sider, and a fourth person were eating lunch at Keith Young's Steakhouse in Madisonville, Louisiana.

49. Both Mr. Saurage and Mr. Sider are bail bondsmen, working for Troy's Bail Bonds.

50. On information and belief, the lunch was related to sheriff's office business.

51. Mr. Saurage arrived at approximately 11:45 a.m., and met Sheriff Smith shortly after.[18]

52. Over the course of several hours, Sheriff Smith and Mr. Saurage consumed alcohol to the point of intoxication.

53. Smith and Saurage and the two others incurred a total bill of $346.21, which

---

[14] *Id.* at *13.
[15] *Rogers v. Smith*, 2023 U.S. App. LEXIS 20871 (5th Cir. Aug. 9, 2023) (*per curiam, unpub.*)
[16] *Smith v. Rogers*, 144 S. Ct. 501 (2023).
[17] *Rogers v. Smith*, *supra*, R. Doc. 290.
[18] Saurage Arrest Warrant at 3.

included five glasses of "Walking Fool" wine, four happy hour vodka martinis, seven Tito's vodkas, one Tanqueray, and one Ketel One Vodka.

54. At some point, Plaintiffs arrived at Keith Young's and sat at the bar.

55. Saurage walked past Couvillion, and pointed to him while facing Sheriff Smith.[19]

56. Sheriff Smith was watching Saurage.

57. Mr. Couvillion's back was turned to Saurage.

58. Saurage again, in an exaggerated over-the-head gesture pointed to Mr. Couvillion.

59. According to criminal investigators, Saurage then pounded his fists together in an "aggressive suggestive" manner.[20]

60. Criminal investigators concluded that "Saurage signaled Randy Smith to execute an attack on Robert Couvillion."[21]

61. On information and belief, Mr. Saurage encouraged Sheriff Smith to attack Mr. Couvillion for speaking critically of his leadership.

62. For several minutes, Sheriff Smith, Saurage, and the other two men at their table discussed the situation.

63. Sheriff Smith got up and walked towards Mr. Couvillion.

64. Saurage got up and followed Sheriff Smith.

65. Mr. Couvillion was sitting on an elevated bar stool.

66. Sheriff Smith put Mr. Couvillion in a chokehold and forced him to the ground, causing Couvillion to strike the left side and the back of his head on the floor.

67. According to the arrest warrant, video shows Smith "lunging towards Couvillion,

---

[19] Saurage Arrest Warrant at 2.
[20] *Id.*
[21] *Id.* at 3.

with Smith's left foot leaving the ground and his right arm clubbing Couvillion's neck before wrapping the choke hold. Couvillion is seen attempting to clinch Smith's choke holding arm with his right arm, as he is being violently pulled from his tall bar style seat to the ground by Smith."

68. According to the arrest warrant, "[m]ultiple witnesses corroborated that Smith initiated the attack from behind without any prior confrontation between the parties."

69. Special Agent Brens described seeing in the video that "Smith slams Couvillion on to the concrete" and "maintains a side control stance on top of Couvillion and delivers a strike to Couvilllion using his right hand."

70. According to the arrest warrant, "[m]ultiple witnesses corroborated that Smith initiated the attack from behind without any prior confrontation between the parties."

71. Troy Sider followed Sheriff Smith and used his body in an attempt to prevent bystanders from interfering in Smith's attack on Couvillion.

72. Sider also stepped or stomped on Couvillion's body while Couvillion was on the floor, leaving boot marks on Couvillion's arm.

73. Special Agent Brens confirmed from video that the "attack appeared to be unprovoked by Couvillion with Smith attacking him from behind with no warning or signs" and "little to no time [for Couvillion] to defend himself or de-escalate or protect himself from Smith's aggression and physical attack."

74. Smith said to Mr. Couvillion, "I'm going to kill you, you motherfucker," and, "You're a dead motherfucker."

75. Responding patrons "struggle[d] to pull Smith off Couvillion."[22]

76. Mr. Couvillion said to Sheriff Smith, "why'd you sneak me from behind?" Sheriff

[22] Saurage Arrest Warrant at 2.

Smith responded, "you're a fucking pussy."

77. As Smith was dragged out of the restaurant, he continued to threaten Mr. Couvillion.

78. One of the witnesses was Tara Ingraham, Mr. Couvillion's wife. She witnessed her husband beaten and threatened with death by the chief law enforcement officer of the parish just feet in front of her.

79. As Sheriff Smith was leaving the restaurant, he heard people calling 911 and said loudly, "Good, call 911, he hit me first."

80. Mrs. Ingraham said to Sheriff Smith, "no he didn't, YOU hit HIM."

81. Sheriff Smith said "shut the fuck up, bitch," to Mrs. Ingraham and lunged at her before being pushed out of the restaurant.

82. Mrs. Ingraham, who is a medical professional, tended to Mr. Couvillion.

83. She took his heart rate and noted that it was 175 beats per minute. Mr. Couvillion reported chest pain, and Mrs. Ingraham feared he was having a heart attack.

84. Mr. Couvillion was taken to the emergency room.

85. According to the arrest warrant, "Agent Brens personally observed numerous injuries to Couvillion's face, including contusions on the inside and outside of his mouth, swelling to the left side of his face, injuries tohis arm, an abrasion and contusion to his right ankle, and an abrasion approximately six inches in length to his back."

86. According to the arrest warrant, "Couvillion suffered a level two concussion" and his "two front teeth were moved from their normal position as a direct result of the altercation with Smith during the battery."

87. The following is a photo of Mr. Couvillion at the hospital.



88. Special Agent Brens concluded that these "injuries constitute serious bodily injury as defined under Louisiana law, including neurological impairment in the form of a concussion and potential long term or permanent disfigurement, specifically his teeth."

89. It is correct that Couvillion's injuries constitute serious bodily injury as defined under Louisiana law.

90. As a result of being a direct witness to Sheriff Smith attacking her husband and threatening him with death, Mrs. Ingraham suffered severe and ongoing emotional distress.

91. According to the arrest warrant, Sheriff Smith "fled the scene" prior "to the arrival of law enforcement."

92. At Sheriff Smith's request, Saurage drove Smith home in the Sheriff's departmental vehicle[23] before the authorities could arrive.

93. Sheriff Smith was arrested on Thursday, June 4.

94. On June 24, 2026, Sheriff Smith plead guilty to one count of felony second-degree battery and one count of misdemeanor disturbing the peace by public intoxication.

[23] Saurage Arrest Warrant at 3.

95. At his plea hearing, Sheriff Smith acknowledged that he was pleading guilty to second-degree battery, and that the definition of that crime is "battery when the offender intentionally inflicts serious bodily injury."[24]

96. That same day, Sheriff Smith resigned from the St. Tammany Parish Sheriff's Office.

97. Mr. Saurage was arrested for "Revised Statute 14:24 / 14:34.1- Principal to Second Degree Battery."[25]

98. Despite pleading guilty to a felony crime, Smith showed a remarkable lack of remorse.

99. For example, on June 5, 2026, Sheriff Smith issued a statement in which he offered a heartfelt apology to the following people:

a. The "citizens of St. Tammany Parish";

b. The "men and women of the St. Tammany Parish Sheriff's Office";

c. The "owners, staff and patrons of Young's Steakhouse";

d. Smith's family and "wife, Adele."[26]

100. Notably absent from the list of persons Sheriff Smith apologized to are Mr. Couvillion and his family.

101. Worse, Sheriff Smith blamed *Mr. Couvillion* for Smith's violence. In his statement, Sheriff Smith suggested that Couvillion's "despicable" online words caused Smith to attack him from behind.

102. Then, again, at his plea hearing, Sheriff Smith again apologized to everyone except

---

[24] Transcript of June 24, 2026 plea hearing at 9:12-21.
[25] Saurage Arrest Warrant at 4.
[26] Sheriff Smith Issues Statement, available online at https://www.stpso.com/news_detail_T6_R247.php

Mr. Couvillion and his family.

103. Smith apologized to:

a. "the citizens of this parish";

b. "the men and women of the St. Tammany Parish Sheriff's Office";

c. and to his own family.[27]

104. Again, Sheriff Smith tried to justify his actions.

105. Despite saying he took "full responsibility," he characterized his battery of Mr. Couvillion as a situation where he "stood up for" his family.[28]

106. Sheriff Smith was sentenced to two years, hard labor, for the battery charge, and a concurrent ninety days for the misdemeanor.

107. That incarceration was suspended pending two years of supervised probation, including all general conditions of Criminal Code Art. 895.

108. He had to pay a fine of $500 for each count plus court costs, and had to wear a monitor that would track his blood alcohol level.

109. And he was required to refrain from personal contact or any communication with Mr. Couvillion.

**C. Sheriff Smith's attack was under color of law.**

110. At the time of the attack, Sheriff Smith was the final policymaker for the sheriff's office.

111. Sheriff Smith's attack on Couvillion was under color of law.

112. That Sheriff Smith's attack on Couvillion was under color of law is corroborated by

[27] Transcript of June 24, 2026 plea hearing at 14:2-6.
[28] Transcript of June 24, 2026 plea hearing at 14:5.

the following facts:

113. Sheriff Smith arrived at the restaurant in his STPSO vehicle with his STPSO firearm.

114. Sheriff Smith left the restaurant in his STPSO vehicle with his STPSO firearm.

115. Sheriff Smith was on-duty at the time of the attack.

116. Sheriff Smith was not off-duty at the time of the attack.

117. When asked if Sheriff Smith was "using paid time off that Friday," STPSO Public Information Officer Lt. Suzanne Carboni declined to say Smith was using PTO.[29]

118. On information and belief, Sheriff Smith's lunch meeting involved official business.

119. After the attack, Sheriff Smith issued a public statement on the STPSO website, identifying himself as "Sheriff Randy Smith" and apologizing (to everyone except Mr. Couvillion) for the attack.[30]

120. In the statement, Sheriff Smith explicitly linked the attack to his "public service" and the "effect such public scrutiny and criticism can have on one's family."[31]

121. He suggested that such public scrutiny and criticism "is accepted and endured by the family…to an extent."[32]

[29] Chris Joseph, STPSO says sheriff makes his schedule based off the needs of community and agency, Fox8 (June 10, 2026).
[30] Sheriff Smith Issues Statement, available online at https://www.stpso.com/news_detail_T6_R247.php.
[31] *Id.*
[32] *Id.*

## CAUSES OF ACTION

### Count One: Violation of the First and Fourteenth Amendments
(Bobby Couvillion against Smith in his individual and official capacities, and against Ibert in his official capacity)

122. Mr. Couvillion re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

123. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ."[33]

124. Specifically, "[g]overnment officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors."[34] They also cannot take an "adverse action against an individual in retaliation for the exercise of protected speech activities."[35]

125. There are three elements of a First Amendment retaliation claim: (1) plaintiff "engaged in constitutionally protected activity;" (2) "defendant's actions caused [plaintiff] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) "defendant's adverse actions were substantially motivated [by] the constitutionally protected conduct."[36]

126. The Fifth Circuit notes that while the plaintiff has the burden of proving that his free speech was "curtailed," that curtailment "may be small" because "there is no justification for harassing people for exercising their constitutional rights."[37]

---

[33] U.S. CONST. amend. I.
[34] *Nat'l Rifle Assoc. v. Vullo*, 602 U.S. 175, 180 (2024) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)).
[35] *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (quoting *Keenan v. Tejefa*, 290 F.3d 252, 258 (5th Cir. 2002)).
[36] *Id.*
[37] *Id.*

127. The Fourteenth Amendment further provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."[38]

128. Here, Mr. Couvillion is a private citizen who sought to exercise his fundamental constitutional right to free speech by sharing his dissatisfaction with Sheriff Smith and the St. Tammany Parish Sheriff's Office.

129. Sheriff Smith is a government official who cannot punish a private citizen for expressing their views under the First Amendment.

130. Mr. Couvillion's claim meets all three required elements to prove First Amendment retaliation.

131. First, Mr. Couvillion's speech was protected because it did not contain obscenity, fighting words, or true threats. His speech did not violate the law in any other way.

132. Second, Sheriff Smith's actions would chill a reasonable person from continuing to criticize his leadership even though that right is constitutionally protected.

133. Third, Sheriff Smith's attack on Mr. Couvillion intended to deter and chill Mr. Couvillion's exercise of free speech in violation of the First Amendment. His actions were motivated by, and in response to, Mr. Couvillion's public criticism of the St. Tammany Parish Sheriff's Office.

134. Therefore, Sheriff Smith is liable to Mr. Couvillion for chilling Mr. Couvillion's speech in violation of the First and Fourteenth Amendment rights.

135. The St. Tammany Parish Sheriff's Office, under the new sheriff, is also liable for the constitutional violation.

---

[38] U.S. CONST. amend. XIV, cl. 1.

136. That is because at the time, Sheriff Smith was the final policymaker for STPSO. And where the final policymaker themself violated a plaintiff's constitutional right, the *Monell* claim is established.[39]

**Count Two: Violation of the Fourth and Fourteenth Amendments**
(Bobby Couvillion against Smith in his personal and official capacities, and Ibert in his official capacity)

137. Mr. Couvillion re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

138. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."[40]

139. As a preliminary issue, the court must determine whether a law enforcement officer was acting under color of law. The Fifth Circuit is clear that this finding "does not depend on" an officer's "on- or off- duty status at the time of the alleged violation."[41] Instead, the Fifth Circuit first considers "whether the officer 'misuse[d] or abuse[d]' their 'official power.'"[42] Second, the court considers whether "there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties."[43] Accordingly, when an officer uses their "official power as a means to achieve [their] private aim," the court may find that the officer acted under color of law.[44]

140. Next, the court must determine whether a seizure occurred. The Supreme Court

[39] *See, e.g., Anderson v. Larpenter*, 2017 WL 3064805 (E.D. La. July 19, 2017) (*Monell* established where "the action of the policymaker itself violated a constitutional right"), *citing Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) ("Where no "official policy" was announced or promulgated but the action of the policymaker itself violated a constitutional right," the "'official policy' requirement" is met.)
[40] U.S. CONST. amend. IV.
[41] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010).
[42] *Id.*, (quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002)).
[43] *Id.*
[44] *See id.*; *see also Tyson v. Sabine*, 42 F.4th 508, 523 (5th Cir. 2022).

has defined "seizure" liberally to include any action where "an officer restrains the freedom of a person to walk away."[45] The use of excessive force makes a seizure unconstitutional under the Fourth Amendment.[46]

141. Then, to determine whether the seizure was unconstitutional, the court must determine whether the officer used excessive force during that seizure. The Supreme Court uses an objective "reasonableness standard" to determine whether an officer used excessive force to restrain the freedom of a person from walking away.[47] Simply put, the Court asks whether a reasonable officer in the same situation would have used the same level of force.[48]

142. The Court has developed four factors to determine whether force was excessive based on the totality of the circumstances: (1) whether the officer had "the need for the application of force;" (2) "the relationship between that need and the amount of force that was used;" (3) "the extent of the injury inflicted;" and (4) "[w]hether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm."[49]

143. This standard "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."[50]

144. Here, Sheriff Smith was acting under color of law because of the facts described above.

---

[45] *Tenn. v. Garner*, 471 U.S. 1, 7 (1985); *see also Brower v. Cnty of Inyo*, 489 U.S. 593, 595 (1989).
[46] *See Graham v. Connor*, 490 U.S. 386, 394 (1989).
[47] *Id.* at 395.
[48] *Id.* at 396 ("the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").
[49] *Id.* at 390 (internal quotations omitted).
[50] *Id.* at 396 (quoting *Tenn. v. Garner*, 471 U.S. 1, 8 (1985) (internal quotations omitted)).

145. Next, Sheriff Smith's actions qualify as a seizure because he restrained Mr. Couvillion's freedom to walk away by putting him into a choke hold and forcing him to the ground.

146. Further, Sheriff Smith used excessive force that was not reasonable under the circumstances. A reasonable officer who runs into a law-abiding vocal critic at a restaurant would not feel the need to use any force against that person.

147. A totality of the circumstances strongly suggests that Sheriff Smith used unreasonable force: (1) Sheriff Smith had no need to apply force because Mr. Couvillion had not violated the law by criticizing Sheriff Smith's leadership or at any point during his time at Keith Young's Steakhouse in the moments leading up to incident at issue; (2) he used a disproportionate amount of force to what was needed, which was *no force*; (3) as a result of Sheriff Smith's unnecessary use of force, Mr. Couvillion sustained injuries that sent him to the emergency room; and (4) Sheriff Smith's use of force was not a good faith effort to maintain discipline.

148. Overall, Sheriff Smith's use of force was a mere bad faith, malicious attempt to harm a private citizen in retaliation for exercising his first amendment right, as detailed in the aforementioned count. There was no governmental interest in this seizure because Mr. Couvillion had not violated the law. And, there was no reason to use force. Thus, Sheriff Smith used unreasonable force in violation of the Fourth Amendment.

149. Therefore, Sheriff Smith is professionally liable to Mr. Couvillion for using excessive force against him in violation of his Fourth and Fourteenth Amendment rights.

150. And the Sheriff's Office is liable per *Monell* given that the claims arise from the actions of the final policymaker himself.

**Count Three: Violation of Louisiana Tort Law of Battery**
(Bobby Couvillion against Smith in his personal and official capacities, and Ibert in his official capacity)

151. Mr. Couvillion re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

152. Louisiana statute defines battery as "the intentional use of force or violence upon the person of another."[51]

153. There are two elements of a civil battery claim: (1) defendant made "harmful or offensive contact with a person;" and (2) defendant "intended to cause the plaintiff to suffer such a contact."[52]

154. The Fifth Circuit is clear that "the physical attack of a private citizen by a police officer absent a valid arrest constitutes a battery."[53]

155. Here, Sheriff Smith intentionally choked, shoved, kicked, and punched Mr. Couvillion. He clearly made harmful and offensive contact with Mr. Couvillion's person. He clearly intended to cause Mr. Couvillion to suffer.

156. Further, Sheriff Smith already plead guilty to second-degree felony battery in the correlating criminal case against him.

157. Therefore, Sheriff Smith is personally and officially liable to Mr. Couvillion for intentionally hurting him in violation of Louisiana tort law.

158. The Sheriff's Office through Ibert is liable for this tort under *respondeat superior.*

---

[51] LA. REV. STAT. § 14:33.
[52] *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987).
[53] *Ross v. Sheriff of Lafourche Parish*, 479 So. 2d 506, 510 (5th Cir. 1985).

**Count Four: Violation of Louisiana Tort Law on Assault**
(Bobby Couvillion against all Defendants; Tara Ingraham against Smith in his individual and official capacities and Ibert in his official capacity)

159. Mr. Couvillion re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

160. Louisiana statute defines assault as "an attempt to commit a battery."[54]

161. Assault can consist of "a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact."[55]

162. Additionally, when the defendant is an officer acting in their professional capacity, a plaintiff must also prove by a totality of the circumstances that the officer used "unreasonable or excessive force" to commit the assault.[56]

163. The Fifth Circuit looks to the following factors to determine whether an officer used excessive force: (1) plaintiff's "known character;" (2) officer's "risks and dangers;" (3) the "nature of the offense;" (4) plaintiff's "chance of . . . escape if the particular means are not employed;" (5) whether the officer had other means available; (6) the comparable "physical size, strength, and weaponry" of the officer versus the plaintiff; and (7) "the exigencies of the moment."[57]

164. Here, as aforementioned, Sheriff Smith was acting within his professional capacity and under color of law.

165. Sheriff Smith made physical and verbal threats of violence leading up to, during, and after the aforementioned battery.

---

[54] LA. REV. STAT. § 14:36.
[55] *Fontenot v. Gusman*, No. 11-1772, 2012 WL 5196426, at *17 (E.D. La. Oct. 18, 2012) (quoting *Groff v. Sw. Beverage Co., Inc.*, 2008-625 (La. App. 3d Cir. 11/5/08), 997 So. 2d 782, 787).
[56] *Scott v. City of Mandeville*, 69 F.4th 249, 258 (5th Cir. 2023).
[57] *Id. see also Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977).

166. Specifically, roughly contemporaneous to the aforementioned battery, Sheriff Smith told Mr. Couvillion, "I'm going to kill you, you motherfucker," and, "You're a dead motherfucker."

167. The aforementioned battery demonstrates that Sheriff Smith had the ability to carry out the threats.

168. Smith continued to make threats to Couvillion even after the physical altercation.

169. Mr. Couvillion had reason to fear that Sheriff Smith's threats would turn into further physical violence against his person.

170. Further, as aforementioned, Mr. Couvillion was not breaking the law, so there was no reason for Sheriff Smith to act at all.

171. In other words, *any* seizure or force would be objectively excessive based on the totality of the circumstances.

172. Therefore, Sheriff Smith liable to Mr. Couvillion for assaulting him in violation of Louisiana tort law.

173. Sheriff Smith is liable to Mrs. Ingraham for assault when he told her to "shut the fuck up, bitch" and lunged at her.

174. The Sheriff's Office through Ibert is liable for these torts under *respondeat superior*.

175. Saurage is liable for his identification of Couvillion as the target, his participation in the decision to attack Couvillion, and his encouragement and inciting of Smith's actions.

**Count Five: Violation of Louisiana Tort Law on Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotional Distress**

(Tara Ingraham against Sheriff Smith in his personal and official capacities and Saurage)

176. Mrs. Ingraham re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

177. There are three elements of a claim for intentional infliction of emotional distress: (1) defendant's actions were "extreme and outrageous;" (2) plaintiff's suffering was "severe;" and (3) defendant intended to cause the suffering or had knowledge that the suffering "would be certain or substantially certain to result from his conduct."[58]

178. The Fifth Circuit allows plaintiffs to bring IIED claims against law enforcement officials.[59]

179. Here, Sheriff Smith's unwarranted violent attack against a private citizen is extreme and outrageous. The ample news coverage and public outcry in response to this attack demonstrate that Sheriff Smith's extreme and outrageous actions violate public policy.

180. In response to witnessing this attack against her husband, Mrs. Ingraham is suffering from severe emotional distress.

181. Sheriff Smith had reason to be substantially certain that Mrs. Ingraham would suffer severe emotional distress as a result of hearing her husband get death threats from a law enforcement officer.

182. Sheriff Smith had reason to be substantially certain that Mrs. Ingraham would suffer severe emotional distress as a result of seeing her husband physically attacked by an angry law enforcement officer.

183. Sheriff Smith had reason to be substantially certain that Mrs. Ingraham would suffer severe emotional distress when he told her to "shut the fuck up, bitch" and lunged at her.

184. Therefore, Sheriff Smith is liable to Mrs. Ingraham for intentionally or negligently

---

[58] *Smith v. Amedisys Inc.*, 298 F.3d 434, 449 (5th Cir. 2002) (quoting *White v. Monsanto Co.*, 5585 So. 2d 1205, 1209 (La. 1991)).

[59] *See generally Hernandez v. Theriot*, 709 Fed. Appx. 755 (2017) (applying *White v. Monsanto Co.*, 5585 So. 2d 1205 (La. 1991)).

inflicting emotional distress on her in violation of Louisiana tort law.

185. The Sheriff's Office is liable for this tort under *respondeat superior*.

186. Saurage is liable for his identification of Couvillion as the target, his participation in the decision to attack Couvillion, and his encouragement and inciting of Smith's actions.

**Count Six: Conspiracy**
(Plaintiffs against Saurage and Sider)

187. Mr. Couvillion re-alleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

188. Under Article 2324 of the Louisiana Civil Code, a person who conspires "to commit an intentional or willful act is answerable . . . for the damages caused by such act."[60]

189. Here, Saurage and Sider's aforementioned actions show that they conspired with and aided Sheriff Smith in intentionally harming Mr. Couvillion.

190. As a result, Mr. Couvillion suffered physical damages.

191. Therefore, Mr. Saurage and Mr. Sider are liable to Mr. Couvillion for the damages caused by Sheriff Smith's aforementioned battery, assault, IIED, and NIED.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants after a trial by jury and award:

a. Declaratory relief;

b. Judgment against Defendants for Plaintiffs' asserted causes of action;

c. Compensatory damages;

d. Special and punitive damages;

[60] LA. CIV. CODE art. 2324(A).

e. Costs and attorney's fees;

f. Interest;

g. Any other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

Most & Associates

*/s/ William Most*

William Most (La. Bar No. 36914)
Hope Phelps (La. Bar No. 37259)
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
Fax: (504) 414-6400
williammost@gmail.com